THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM B. GAGE, E. CLINTON CLARK and FRANK H. HAWTHORN v. DEYO LOHNAS, FRANCIS W. WELLS, GEORGE I. HUMPHREY, WILLIAM H. GARRISON, MICHAEL FINN, GEORGE W. AINSWORTH and BENJAMIN W. CLARK, Comprising the Board of Trustees of the Village of Saratoga Springs.

*Constitution, sec. 18, art. 3, not applicable to city streets — construction of a reference, to part of itself, in a statute — delegation by a board of trustees of authority to make an assessment — certiorari, when quashed and the relators relegated to an action.*

In the proceedings taken under a writ of *certiorari* to review the action of the board of trustees of the village of Saratoga Springs, in widening a street of that village and in imposing an assessment upon the relators and other persons to defray the cost and expense thereof, it appeared that the street was originally about sixty-six feet wide, and that this width was, by the resolution of the board of trustees, increased to 100 feet by taking the increased width from the lots on the northerly side of the street, and that, by chapter 136 of 1887, the board of trustees was authorized to assess the expense upon such property as they should deem to be benefited, except the lots of which a portion was taken to make the widening, these being exempted. The relators who owned the property near, but not upon the street in question, were deemed by the trustees to be benefited and their property was included in the property assessed.

It was urged that the act, or so much of it as authorized the streets of the village to be widened, pursuant to a resolution of the board of trustees, was unconstitutional because in conflict with section 18, article 3 of the State Constitution, which forbids the legislature to pass a private or local bill " laying out, opening, altering or discontinuing roads, highways or alleys."

*Held,* that this provision of the Constitution did not apply to city streets.

*Matter of Woolsey* (95 N. Y., 135) followed.

Chapter 136 of the Laws of 1887, under which this street was widened, consisted of two sections. The first section provided that there should be added to the charter of the village (chap. 220 of 1866, and the several acts amendatory thereof) " the following sections, to be known and numbered as sections 71, 72, 73, 74, 75, 76, 77 and 78." Section 72 provides, in detail, for the assessment for the cost of constructing sewers, with ample provisions for the hearing of all persons to be affected by the assessment. Section 75 directs that the amount of the awards and fees of the commissioners, and other expenses of the appraisal, " shall be forthwith assessed by the board of trustees upon the property which they deem benefited thereby, other than the property, a portion of which shall have been taken therefor, in the manner provided in section *two* of this act."

Section *two* of the act of 1887, above cited, simply provides that "this act shall take effect immediately."

*Held,* that it was obvious that section 72, being the second section of the new sections added to the charter by section 1 of the act of 1887, was intended by the words "section two of this act," and that the court should give effect to the obvious intention of the legislature when to do so would prevent the act from failing, and when by doing so no violence would be done to the language employed.

It was objected that the property of the relators was not benefited by the improvement.

*Held,* that this was a question for the trustees to determine, and that as the return affirmed that their property was benefited, and as no motion had been made to correct it or to supply any defects existing in it, the presumption was conclusive that it stated the whole truth in respect to the matters specified in and required by the writ.

The board of trustees appointed a committee consisting of two trustees and the clerk of the board to prepare the assessment. The committee did prepare an assessment and submitted it to the board of trustees, which then made the assessment and gave notice thereof and of the time and place to hear grievances. It was objected that in placing the clerk upon the committee to prepare the assessment, the board delegated to him a function which was incapable of delegation.

*Held,* that while the board of trustees was no doubt aided by the report, it still remained for the trustees to exercise their judgment in making the assessment, and that as they had performed that duty they did not delegate it to the clerk.

A motion was made to dismiss the writ as improvidently issued, and it appeared, by affidavit, that more than half of the assessments had been paid.

*Held,* that as an action was given to the relators by chapter 68 of 1880, authorizing an action to be brought to vacate a tax or assessment, the public interest required that the relators should confine their litigation to the protection of their individual interests instead of extending it to the overthrow of a work of public utility, and that the writ of *certiorari* should be superseded and quashed.

A COMMON-LAW *certiorari* to review the action of the board of trustees of the village of Saratoga Springs in widening a street of the village, and imposing an assessment upon the relators and others to defray the cost and expense thereof, was allowed at a Special Term, held in Saratoga county on April 16, 1889.

The street was one continuous street, though the several sections of it bore different names. It was about sixty-six feet wide, and this width was by the resolution of the board of trustees increased to 100 feet by taking the increased width from the lots on the northerly side of the street. By the act authorizing the board of trustees to widen streets in the village, Laws 1887, chapter 136, the board was authorized to assess the expense upon such property as they shall deem to be benefited, except the lots of which a portion is taken to make the widening; these are exempted. The relators

own property near, but not upon the street in question, and their property was deemed by the trustees to be benefited, and was included in the property assessed. A motion was also made to dismiss the writ as improvidently issued.

*T. F. Hamilton*, for the relators.

*E. T. Brackett, C. S. Lester* and *John L. Henning*, for the defendants.

LANDON, J. :

The imposition of local assessments for benefits is an exercise of the taxing power. Subject to constitutional limitations, the legislature may prescribe how this power shall be exercised. Unless there is some constitutional restraint the act in question is valid. (Laws 1887, chap. 136.) That is to say, the legislature could authorize the board of trustees of Saratoga Springs, by a resolution of the board without a petition of property owners, to widen any of the streets of the village, and also to prescribe the extent and details of such widening. The legislature could direct that the expense thereof should be imposed upon the property to be benefited, other than the property some part of which should be taken for the widening; and also could authorize the board of trustees to determine what property other than that exempted would be benefited, and to apportion the assessment upon such property. (*Spencer* v. *Merchant*, 100 N. Y., 585; *Genet* v. *City of Brooklyn*, 99 id., 296; *Matter of Van Antwerp*, 56 id., 261.)

It is urged that the act, or so much of it as authorizes a street of the village to be widened pursuant to a resolution of the board of trustees, is unconstitutional, because in conflict with section 18, article 3 of the State Constitution which forbids the legislature to pass a private or local bill "laying out, opening, altering or discontinuing roads, highways or alleys." It was held in *Matter of Woolsey* (95 N. Y., 135) that this provision of the Constitution does not apply to city streets. The reasoning is based upon the fact that, pending the consideration of the provision, the commissioners who reported it added the words "streets and alleys" to "roads and highways," and the legislature in submitting the provision struck out the word "streets." That section 1 of article 8 of the Constitution provides for the

formation of municipal corporations by special act, and that such acts may be altered or repealed, thus authorizing the legislature by special act to provide a street or highway system for municipal corporations different from the general highway system of the State, outside of such corporations. Saratoga Springs is a municipal corporation created by special acts, and hence the legislature may by special act regulate its highway or street system.

The objection that the act does not provide an opportunity to the persons to be affected by the assessment to be heard thereupon is based upon a clerical error in the act. Chapter 136 of the Laws of 1887, under which this street was widened, consists of two sections, but the first section provides that there shall be added to the charter of the village (chap. 220, Laws of 1866, and the several acts amendatory thereof) "the following sections, to be known and numbered as sections 71, 72, 73, 74, 75, 76, 77, and 78." Then follow the sections as so numbered, the first being section 71 and the second 72, etc.

Section 72 provides in detail for the assessment for the cost of constructing sewers, with ample provisions for the hearing of all persons to be affected by the assessment. Section 73, embraced in section 1 of the same act provides for the widening of any street in the village by the board of trustees. Section 75 of the same section and act provides as follows: "In the case of real estate, and easements taken for the purpose of widening a street, the amount of the awards and the fees of the commissioners and other expenses of the appraisal shall be forthwith assessed by the board of trustees upon the property which they may deem benefited thereby, other than the property a portion of which shall have been taken therefor, in the manner provided in section *two* of this act." Section 2 of the act simply provides that "this act shall take effect immediately." It is obvious that section 72, being the second section of the new sections added to the charter by section 1 of the act of 1887, is intended by the words "section two of this act." We must give effect to the obvious intention of the legislature, when to do so will prevent the act from failing, and when no violence will be done to the language employed. "Section two of this act" means the second new section added by this act to the charter, namely "section 72." So understood, the trustees must assess the expense of widening a street in the manner provided in section 72. This the trustees did, and the

parties affected by the assessment had, in pursuance of the terms of the section, their "day in court" before the assessment was confirmed.

It is objected that the property of the relators is not benefited by the improvement. This was a question for the trustees to determine. The return affirms that their property was benefited.

Section 2135, Code of Civil Procedure, provides that if the return is defective, the court may direct a further return. The return should, in addition to a transcript of the record or proceedings, state the whole truth in respect of the other matters specified in and required by the writ (§ 2134); and in the absence of any motion to correct or supply its defects, the presumption is conclusive that it does so. (*People ex rel. Cummings* v. *Koch,* 2 N. Y. St. Rep., 110; *People ex rel. Cronk* v. *Weld,* 6 id., 173.) The return is an answer to this objection.

The board of trustees appointed a committee consisting of two trustees and the clerk of the board to prepare an assessment. This committee did prepare a scheme or report of an assessment and submitted it to the board. The board then made the assessment and gave notice thereof, and of the time and place to hear grievances. It is objected that, in placing the clerk upon the committee to prepare the assessment, the board delegated to him a function which was incapable of delegation.

It is probable that the clerk was placed upon the committee in order to do the necessary clerical work; but assuming that he participated in the deliberation of the committee, and influenced the result, the result was only a report in the form of a proposal or scheme. Nothing was passed upon or determined by it. The board of trustees were, no doubt, aided by it, but it remained for them to exercise their judgment and make the assessment, and they performed that duty; they did not delegate it to the clerk. We conclude that the objections urged by the relators should be overruled upon the merits.

The defendants, however, urge that *certiorari* is not the proper remedy, and a motion is made to dismiss the writ upon grounds of public policy. It appears by affidavit that more than half of the assessments have been paid. A common-law writ of *certiorari* issues where the statute has not expressly taken it away, or provided

some other method of review, in cases where a review is appropriate, where no other adequate remedy is available, and in the discretion of the court a remedy should be allowed. The court grants it, lest the error, perverseness or partiality of officers not accustomed to judicial functions may work an irremediable injury. If a party conceiving himself aggrieved has an adequate remedy as a right, he need not apply to the court for the favor of this.

Here a remedy by action is given the relators by chapter 68 of the Laws of 1880, being an act to authorize the sale of lands in the village of Saratoga Springs for unpaid taxes and special assessments. Section 8 provides that "any person interested in property upon which a tax or assessment has been, or may be, assessed or levied may bring an action to vacate and set aside such tax or assessment, or any sale made by virtue thereof and to enjoin and restrain the sale of any real or personal property." Of course, he may in his complaint set forth every fact constituting his cause of action, and, therefore, may there rely upon every ground urged here. The appropriateness of a resort to action is apparent. The majority of persons affected by the assessment in question do not complain. Public interests would seem to require that the relators confine their litigation to the protection of their individual interests instead of extending it to the overthrow of a work of public utility. (*Matter of Flushing Avenue*, 101 N. Y., 678.)

The writ of *certiorari* is superseded and quashed, with fifty dollars costs and disbursements against the relators.

LEARNED, P. J., concurred; PUTNAM, J., not acting.

*Certiorari* superseded and quashed, with fifty dollars costs and disbursements against relators.